JUDGE LEISURE    08 CIV 6430

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GLOBAL MARITIME INVESTMENTS LTD.          :

               Plaintiff,          :

      - against -          :

AGRENCO ROMA a/k/a AGRENCO ITALIA SpA   :
a/k/a AGRENCO ITALY, AGRENCO GROUP,      :
and AGRENCO SA.                          :

          Defendants.          :
------------------------------------------------------------X



## VERIFIED COMPLAINT

Plaintiff, GLOBAL MARITIME INVESTMENTS LTD. (hereinafter referred to as

"Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its

Verified Complaint against the Defendants, AGRENCO ROMA a/k/a AGRENCO ITALIA SpA

a/k/a AGRENCO ITALY (hereinafter referred to as "AGRENCO ROMA"), AGRENCO

GROUP, and AGRENCO SA, (hereinafter collectively referred to as "Defendants"), alleges,

upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the

breach of maritime contract of charter. This matter also arises under the Court's federal question

jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the

Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the

Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the owner of the motor vessel "PELAGIA" (hereinafter the "Vessel").

3.      Upon information and belief, Defendant AGRENCO ROMA was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, and was at all material times the charterer of the Vessel.

4.      Upon information and belief, Defendant AGRENCO GROUP was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

5.      Upon information and belief, Defendant AGRENCO SA was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

6.      By a fixture recap agreement dated October 17, 2007 which incorporated the terms of a head charter dated November 7, 2006, Plaintiff time chartered the Vessel to Defendant AGRENCO ROMA for a single trip "VIA ECSA TO MED / BSEA" (the "Charter Party").

7.      Pursuant to the Charter Party, Defendant AGRENCO ROMA agreed to redeliver the Vessel to the Plaintiff "DLOSP ISP MED SEA NOT EAST OF PASSERO, CHRTRS OPTION PASSING PASSERO WEST BOUND".

8.      During the course of the charter, disputes arose between the parties regarding Defendant AGRENCO ROMA's failure to pay hire and IFO due and owing under the Charter Party. *A copy of Plaintiff's Final Hire Statement, is annexed hereto as Exhibit "1".*

9.      As a result of Defendant AGRENCO ROMA's breach of the Charter Party, Plaintiff has sustained damages in the total principal amount of $249,562.91 exclusive of

2

interest, arbitration costs and attorneys' fees.

10.     Despite due and repeated demand, Defendant AGRENCO ROMA has failed to pay to Plaintiff the amounts due and owing due to its breach of the Charter Party.

11.     Pursuant to the Charter Party, disputes between the parties are to be submitted to arbitration in London subject to English law.  Plaintiff has commenced London arbitration of its claim against Defendants.

12.     This action is brought in order to obtain jurisdiction over Defendants and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

13.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law.  Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.  As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

A.     Principal claim:

| | | |
|---|---|---|
| | Balance due and owing on Plaintiff's Final Hire Statement: | $248,264.17 |
| | Damages for redelivery with insufficient IFO remaining on board: | $ 1,298.74 |
| | Total Principal: | $249,562.91 |
| B. | Estimated interest on claim - 3 years at 7.5% compounded quarterly: | $62,319.95 |
| C. | Estimated arbitration costs: | $30,000.00 |
| D. | Estimated attorneys' fees and expenses: | $60,000.00 |
| Total: | | $401,882.86 |

3

14. Defendant alternately refers to itself as and responds to claims against it as AGRENCO ROMA, AGRENCO ITALIA SpA, AGRENCO ITALY, AGRENCO GROUP, and AGRENCO SA.

15. Defendant AGRENCO ROMA is named in the Charter Party as charterer. *See copy of fixture recap annexed hereto as Exhibit "2".*

16. Plaintiff has submitted a Claim Submission against Defendant AGRENCO in the London arbitration proceeding based on its claim against AGRENCO ROMA. *A copy of the Claim Submission is annexed hereto as Exhibit "3".*

17. Defendant AGRENCO SA responded to the Claim Submission by submitting Respondents' Defence wherein it refers to itself as "Agrenco Italia SpA" and utilizes AGRENCO GROUP letterhead. *See copy of page 1 of Respondents' Defence annexed hereto as Exhibit "4".*

18. The Final Hire Statement attached to both Plaintiff and Defendants' submissions is addressed to Defendant AGRENCO ITALIA SPA. *See Final Hire Statement, Exhibit "1".*

19. Defendant has attached a Preliminary Voyage Performance Report as an exhibit to its Defence Submission referring to it as AGRENCO ITALY. *See copy of Preliminary Voyage Performance Report annexed hereto as Exhibit "5".*

20. Defendant AGRENCO ROMA is a shell-corporation through which Defendants AGRENCO SA and/or AGRENCO GROUP conduct its business.

21. Defendant AGRENCO ROMA has no separate, independent identity from Defendant AGRENCO SA and/or AGRENCO GROUP.

22. Defendant AGRENCO SA and/or AGRENCO GROUP are the alter-egos of Defendant AGRENCO ROMA because they dominate and disregard AGRENCO ROMA's

corporate form to the extent that AGRENCO SA and/or AGRENCO GROUP are actually carrying on AGRENCO ROMA's business and operations as if the same were its own, or vice versa.

23.    Defendants AGRENCO SA and/or AGRENCO GROUP use Defendant AGRENCO ROMA as their "chartering arm" or as a "pass through" entity such that they can insulate themselves from creditors relating to their commercial obligations.

24.    In the further alternative, Defendants are partners and/or joint venturers.

25.    In the further alternative, Defendants are affiliated companies such that AGRENCO SA and/or AGRENCO GROUP are now, or will soon be, holding assets belonging to AGRENCO ROMA, or vice versa

26.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendants. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "6"*.

27.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE,** Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.     That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$401,882.86** belonging to, due or being transferred to, from, or for the benefit of the Defendants, including but not limited to such property as may be held, received or transferred in Defendants' name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That the Court retain jurisdiction to compel the Defendants to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which has or may be initiated in the future, including any appeals thereof;

E.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

6

F.    That this Court award Plaintiff the attorneys' fees and costs incurred in this

action; and

G.    That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated:        New York, NY
              July 17, 2008

                              The Plaintiff,
                              GLOBAL MARITIME INVESTMENTS LTD.

                         By:  _____

                              Patrick F. Lennon
                              Coleen A. McEvoy
                              LENNON, MURPHY & LENNON, LLC
                              420 Lexington Avenue, Suite 300
                              New York, NY 10170
                              (212) 490-6050 - phone
                              (212) 490-6070 - facsimile
                              pfl@lenmur.com
                              cam@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
                 )    ss.:    City of New York
County of New York )

1.  My name is Coleen A. McEvoy.

2.  I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.  I am an attorney in the firm of Lennon, Murphy & Lennon, LLC attorneys for the Plaintiff.

4.  I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.  The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.  The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.  I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      New York, NY
            July 17, 2008

Coleen A. McEvoy

# EXHIBIT 1



**GMI**

GLOBAL
MARITIME
INVESTMENTS
LIMITED

Walker House, 87 Mary Street, George Town,
Cayman Islands, Grand Cayman KY1-9002

Attachment 5

| VESSEL: | MV PELAGIA | | | | |
|---|---|---|---|---|---|
| OWNERS: | GMI | | | | |
| CHARTERERS: | AGRENCO | C/P DD: | 19.10.07 | | |
| DAILY HIRE 1ST 50 DAY: | 73,000.00 | | BALLAST BONUS: | 1,450,000.00 | |
| DAILY HIRE BLCE: | 85,000.00 | | | | |
| COMMISSION: | 4.00% | | BROKERAGE COMM: | 0.00% | |

| | DATE | TIME | GMT | | |
|---|---|---|---|---|---|
| DELIVERED: | 24/10/07 | 02:01 | Y | | |
| TO: | 13/12/07 | 02:01 | Y | | |
| DURATION: | 60.0000 | | | | |
| FROM: | 13/12/07 | 02:01 | | | |
| TO: | 06/01/08 | 23:30 | | | |
| DURATION: | 24.8951 | | | | |

### HIRE STATEMENT

| | | | | OWNERS | CHARTERERS |
|---|---|---|---|---|---|
| HIRE 1ST 50 DAYS: | 50.00 DAYS @ | 73,000.00 = | | 3,650,000.00 | |
| HIRE BLCE: | 24.90 DAYS @ | 85,000.00 = | | 2,116,068.81 | |
| BALLAST BONUS: | | = | | 1,450,000.00 | |
| ADDRESS COMMISSION: | | = | | | 288,543.47 |
| BROKERAGE COMMISSION: | | = | | | - |
| | | | | | |
| BUNKERS ON DELIVERY | | | | | |
| IFO: | 1068.2 MT @ | 425 = | | 453,135.00 | |
| MDO: | 73.2 MT @ | 700 = | | 51,240.00 | |
| | | | | | |
| BUNKERS ON REDELIVERY: | | | | | |
| IFO: | 766.8 MT @ | 425 = | | | 325,890.00 |
| MDO: | 58.52 MT @ | 700 = | | | 40,964.00 |
| | | | | | |
| I.L.O.H.C. | | = | | 5,000.00 | |
| | | | | | |
| CABLES / VICTUALLING / EXPENSES: | | | | | |
| | 1500 PER | 30 DAYS = | | 3,893.45 | |
| | | | | | |
| CHARTERERS PAYMENTS: | 1ST HIRE | = | | | 1,595,314.73 |
| | | | | | 291,874.00 |
| | | | | | 1,100,000.00 |
| | 2ND HIRE | = | | | 1,051,939.73 |
| | 3RD HIRE | = | | | 1,051,284.73 |
| | 4TH HIRE | = | | | 1,081,913.73 |
| | 5TH HIRE | = | | | 378,698.90 |
| | 6TH HIRE | = | | | 347,670.20 |
| | | | | 7,729,165.26 | 7,480,891.09 |

| TOTAL DUE TO OWNERS: | | = | | 248,264.17 | |

Payable To:-
HSBC Bank plc
53 Akti Miaouli Str
185 38 Piraeus Greece
Swift: M I D L G R A A
IBAN: GR5207100010002000106765
Account number:001-067651-008 U
Beneficiary: Global Maritime Investments Limit

# PELAGIA
## FINAL HIRE STATEMENT

E-Mail: operations@cgrewa.com

| | |
|---|---|
| Date: | 10.Jan.2008 |
| Doc Number: | Final Hire 1001 |
| Vessel: | PELAGIA |
| C/P Date: | 19.Oct.2007 |
| Delivery: | PARANAGUA |
| Redelivery: | AS PER C/P |

OWNER : GMI GLOBAL MARITME INVESTEMENTS
CHARTERER: AGRENCO ITALIA SPA

FINAL HIRE STATEMENT
Period: Oct 24 - 0201 GMT, 2007 / Jan 04 - 1605 GMT, 2008

| To / Account: | | OWNER : GMI GLOBAL MARITIME INVESTEMENTS | | | | | Debit (US$) | Credit (US$) |
|---|---|---|---|---|---|---|---|---|
| TOTAL | 72.66944 | DAYS AT USD | 72.000,00 | | per Day | | | 5.304,569,44 |
| BALLAST BONUS | | GROSS AT USD | 1.450.000,00 | | | | | 1.450.000,00 |
| DIFFERENCE ON HIRE | | USD | 12.000,00 | | 22.66544 | | | 272.033,33 |
| C/EV: | | USD PER MONTH OR PRORATA | 1.500,00 | | | | | 3.339,71 |
| COMMISSION: | | BANCHERO COSTA: | 4,00% | | | | 281.076,11 | |
| | | CALLIOPE: | 0,00% | | | | | |
| DELIVERY BUNKERS: | | IFO: | 1.066,290 | X | USD | 425,00 | | 453.195,00 |
| | | MDO: | 73,200 | X | USD | 700,00 | | 51.240,00 |
| REDELY BNKR DEDUCTION: | | IFO: | 833,740 | X | USD | 425,00 | 354.339,50 | |
| | | MDO: | 66,146 | X | USD | 700,00 | 46.302,20 | |
| | BUNKERS SUBJECT TO RECEIPT OF BUNKER DELY RECEIPT | | | | | | | |
| ONHIRE SURVEY | USD | | 0% | | | | | |
| OFFHIRE SURVEY | USD | 1.800,00 | 50% | | | | | 900,00 |
| ILOHC | USD | 5.000,00 | | | | | | 5.000,00 |
| ESTIMATED UNDERPERFORMANCE SUBJECT TO FINAL REPORT | | | | | | | | |
| 71,4 HRS | 2,975 | DD | AT USD | 88.000,00 | | | 262.875,00 | |
| IFO | 81,1 | MT | AT USD | 425,00 | | | 34.467,50 | |
| MDO | 2,05 | MT | AT USD | 700,00 | | | 1.435,00 | |
| REMITTED: | | H/P - 1 | 26.Oct.2007 | | USD | 1.845.262,79 | | |
| | | H/P - 1 | 05.Nov.2007 | | USD | 1.100.000,00 | | |
| | | H/P - 2 | 07.Nov.2007 | | USD | 1.051.939,73 | | |
| | | H/P - 3 | 22.Nov.2007 | | USD | 1.051.939,73 | | |
| | | H/P - 4 | 07.Dec.2007 | | USD | 1.051.939,73 | | |
| | | H/P - 5 | 22.Dec.2007 | | USD | 373.696,60 | | |
| | | H/P - 6 | 04.Jan.2008 | | USD | 347.725,29 | | |
| | | TOTAL REMITTANCES | | | | | 5.825.329,82 | |
| | Balance Due To Owners | | 257.308,44 | | USD | | | |
| | | | | | | | (257.308,44) | |
| | | | | | Sub-Totals | | | |
| | | | | | | | $ 7.539.516,49 | $ 7.539.516,49 |

Balance Due Remitted To:
Beneficiary correspondent Bank:

For credit to:

Account number:

In Favour of:

# EXHIBIT 2

- C/P DATED 19 OCT 2007

M.V. PELAGIA                                        Attachment  1

BAHAMAS FLAG BLT 1995
71742 MT DWT ON 13,43M
TPC 65,8
LOA/BM 223,7M/32,26M
GRT/NRT 38137/24082
GRAIN 3005573 CBF
ABT 14K ON 28MT(B)/13.5K ON 29MT (L) 380 CST + 0,7MT MDO
PORT 1,5MT 380 CST + 0,7 MT MDO


CUBIC B/DOWN

N.1 10755.9
N.2 12480.3
N.3 12411.4
N.4 12424.1
N.5 12583.5
N.6 12489.3
N.7 12043.0

VESSEL'S DETAILS ALL ABOUT, GIVEN AS GUIDANCE DESCRIPTION PER CP


- OWS : GLOBAL MARITIME INVESTMENTS LTD,
         WALKER HOUSE
         87 MARY STREET
         GEORGETOWN
         CAYMAN ISLANDS
         CY11002


- A/C AGRENCO ROMA

- NEGO/EVENTUAL FXTRE TO BE KEPT STRICTLY PANDC

- DELY AFSPS PARANAGUA OR ON PASSING PARANAGUA SOUTHBOUND
- DELY/REDELY AT ATDNSHINC

- LAYCAN 24/30 OCT  00.00/24.00 HRS
  VESSEL PASSED PASSERO 7TH OCT 0630, PASSED GIB 10TH OCT, ETA PARANAGUA
  0300 HOURS ON 24TH OCT 2007, AGW/WP/UCE

- 1 TCT VIA ECSA TO MED / BSEA VIA SP/S SB/S SA/S ALW AFL AWL W/I IWL
  EXCEPT NAABSA AS PER CL.6 OF NYPE FOR ECSA TRADING, AND TRADING ALWAYS
  ACCORDING TO HEAD CP

- REDELY DOLSP 1SP MED SEA NOT EAST OF PASSERO, CHRTRS OPTION PASSING
  PASSERO WEST BOUND

- HIRE USD 73.000 DAILY INCLOT PAYABLE EVERY 15 DAYS IN ADVANCE, FOR
  FIRST 50 DAYS, HIRE USD 85000 PER DAY THEREAFTER,

- PLUS USD 1,450,000 GROSS BALLAST BONUS

- FIRST HIRE AND BALLAST BONUS TOGETHER WITH VALUE OF BUNKERS ON
  DELIVERY,TO BE PAID LATEST ON VESSEL'S DELIVERY.

- TRADING EXCL : AS PER B/B HEAD CP
  ALWAYS VIA SAFE BERTHS/SAFE PORTS/SAFE ANCHORAGES, ALWAYS WITHIN
  BRITISH INSTITUTE WARRANTY LIMITS, EXCLUDING ISRAEL, LIBYA,
  ALGERIA, LEBANON, SYRIA, ALBANIA, TURKISH OCCUPIED CYPRUS, CUBA,
  HUDSON BAY, ANGOLA, NAMIBIA, NORTH KOREA, CAMBODIA, RUSSIAN/C.I.S.
  PACIFIC PORTS, ALASKA, IRAQ, ORINOCCO,YEMEN, WAR AND WARLIKE ZONES AS
  WELLAS THOSE PLACES FROM TIME TO TIME EXCLUDED BY VESSEL'S FLAG STATE
  AUTHORITIES OR THE UNITED NATIONS.
  MURMANSK TRADING ONLY BETWEEN APRIL AND OCTOBER

VSL WILL NOT BREAK INL

- CGO ALLOWED : AS PER B/B CP

- CARGO EXCLUSIONS:
INFLAMMABLE, HAZARDOUS, INJURIOUS, CORROSIVE OR DANGEROUS CARGOES,
RADIOACTIVE MATERIALS, SEMI-PREPARED CARGOES DESTINED FOR HUMAN
CONSUMPTION, FERRO SILICATES, FERROSILICON, BORAX OR BORATES,
PYRITES, CALCIUM CARBIDE, DIRECT REDUCED IRON ORE PELLETS, IRON
BRIQUETTES, SPONGE IRON, HOT BRIQUETTE IRON, AMMONIUM NITRATE BUT
HARMLESS NPK ALWAYS ALLOWED,
LOGS, ARMS, AMMUNITIONS, WAR MATERIALS, NAPHTHA, TAR, ASPHALT,
PITCH, CREOSOTED GOODS, COPRA, HIDES, LIVESTOCK, PIG IRON (SEE
BELOW), SCRAP, MOTOR BLOCKS, TURNINGS, STEEL PRODUCTS, FISHMEAL,
PETROLEUM OR ITS PRODUCTS (BUT PETCOKE ALLOWED, SEE BELOW),
SUNFLOWER SEED EXPELLERS, COTTON, MOBILE HOMES AND PREFABRICATED
HOUSES, ASBESTOS, BONES, TOBACCO, SODA ASH, SALTCAKES, CLAYS,
MINERAL SANDS (I.E. ZIRCON, RUTILE, ILMENITE AND SILICA BUT OLIVIN
SAND ALLOWED), SULPHUR, SALT, CEMENT, CEMENT CLINKER.

CONCENTRATES, IF CARRIED, ALWAYS TO BE IN ACCORDANCE WITH I.M.O.
REGULATIONS.

ALL CARGOES TO BE LOADED/STOWED/TRIMMED/DISCHARGED IN ACCORDANCE
WITH LOCAL AND I.M.O. RECOMMENDATIONS AND REGULATIONS.

PIG IRON PROTECTING CLAUSE
-----------------------------
IN THE EVENT THAT PIG IRON IS LOADED, THEN PONTA DA MADEIRA IS
ALWAYS TO BE EXCLUDED AND CHARTERERS ARE TO MAKE ALL REASONABLE
EFFORTS DURING THE LOADING OPERATION TO AVOID DAMAGE TO THE VESSEL.
CHARTERERS TO ENDEAVOUR TO SUPPLY A REASONABLE AMOUNT OF PALLETS OR
SUITABLE DUNNAGE ON VESSELS TANK TOPS PRIOR COMMENCEMENT OF LOADING
AND LOADING OPERATION TO BE SUPERVISED BY MASTER TO HIS SATISFACTION.

PETCOKE PROTECTING CLAUSE
----------------------------
PETCOKE LIMITED TO GREEN DELAYED OR CALCINED. IN THE EVENT THAT
PETCOKE IS CARRIED, CHARTERERS TO ARRANGE ANY CHEMICALS THAT MAY
BE NEEDED TO PREPARE VESSELS HOLDS FOR LOADING VESSEL.

IF PETCOKE IS LOADED AS LAST CARGO THEN CHARTERERS TO PAY USD8,000
LUMP SUM ILOHC.

CHARTERERS TO REMAIN RESPONSIBLE AND  AT THEIR TIME RISK
AND EXPENSE FOR REMOVAL/DISPOSAL OF HOLD WASHING WATER IF SAME NOT
ALLOWED TO BE PUMPED OVERBOARD WITHIN TERRITORIAL WATERS OF THAT
PORT/COUNTRY.

- BUNKERS CL : BUNKERS ON DELIVERY AS ON BOARD, EXPECTED AS GUIDANCE
  (EXACT QUANTITIES TO BE ASCERTAINED BY CHRTRS AFTER CHECKING WITH
  MASTER) TO BE ABOUT 1050 MTS IFO AND ABOUT 70 MTS MDO. BUNKERS ON REDELY
  TO BE ABOUT 850 MTS IFO AND ABOUT 55 MTS MDO.
  SAME PRICE BENDS USD 425 PMT/IFO AND USD 700 PMT/MDO

- 4 ADD + 1.25 PCT BCDRY (ADCOM ONLY DEDUCTIBLE FROM HIRE/BB)

- OWISE ALL AS PER BTB CP ''PELAGIA MARITIME/STX PAN OCEAN DTD 7 NOV 2005''
  AND OWS ADDITIONAL AMENDMENTS AS PER THEIR MESSAGE 18 OCT 2007 12.26 LDN TIME
  AND WITH LOGICAL ALTERATIONS, ADDITIONS, DELETIONS AS PER MAIN TERMS AND
  WITH FLWG EXCEPTION:

- CL.11  BANK :

          HSBC BANK PLC

          93 AKTI MIAOULI STR

          18538 PIRAEUS GREECE

4

SWIFT: K I D L G R A A

IBAN: GB5207100010000001067551036

ACCOUNT NUMBER:001-067651-036 USD

BENEFICIARY: GLOBAL MARITIME INVESTMENTS LIMITED

END RECAP

WHILST THANKING OWS/CHRTS  FOR THIS FXTRE THY ARE KINDLEY REQUESTED TO
GIVE THEIR COMMENTS/APPROVAL THE ABV RECAP

RGDS


Ref : AF42298538  19/10/2007 16:25:25

Banchero Costa and Co Spa
Capes/Panamax Department
.te: 19/10/2007
Time: 16:25:38

5

# EXHIBIT 3

Page No. 1

holman fenwick willan hfw

Marlow House
Lloyds Avenue
London EC3N 3AL
England

Christopher Moss
4 Charlotte Place
Wilton Road
London, UK   SW1V 1DP

A G Scott
Creek House
The Lane
West Mersea
Essex, UK   CO5 8NS

T: +44 (0)20 7488
2300
F: +44 (0)20 7481
0316
DX1069 London City
EC3

Agrenco SA
Attn Fabio Desideri
12 Avenue des Morgines
1213 – Petit Lancy
Geneve, Switzerland

hfw.com

### Re: m.v. "PELAGIA" – C/P dated 19/10/07

| | | | |
|---|---|---|---|
| Your Ref: | | Direct Line:   +44 (0)207 264 8184 | Date:   11 June 2008 |
| Our Ref:   BSP/ADB/225 | | Email:   Team.BP@hfw.com | |

### Claim Submissions

Dear Sirs

We ask that you accept this letter and its accompanying attachments as our clients' Claim Submissions in support of their claims against Agrenco Roma.

### Introduction

1.  This case concerns disputes arising out of the redelivery of m.v. "PELAGIA" ("the Vessel") after a time trip charter in late 2007 / early 2008. The majority of the claim turns on the question of where the Vessel was to be redelivered, it being our clients' case that she was redelivered in the wrong place.

### The Charterparty

2.  The relevant contract is contained in or evidenced by a fixture recap dated 19 October 2007 which incorporated the terms of a head charter dated 7 November 2006 with logical alterations [**Attachment 1**]. Under the contract our clients, Global Maritime Investments Ltd ("the Owners") time chartered the Vessel to Agrenco Roma ("the Charterers") for a single trip "*VIA ECSA TO MED / BSEA...*" ("the Charterparty").

3.  Under the Charterparty, the Vessel was to be redelivered to the Owners "*DLOSP 1SP MED SEA NOT EAST OF PASSERO, CHRTRS OPTION PASSING PASSERO WEST BOUND*". This is the key clause for the purposes of this arbitration.


holman fenwick willan

4.    However this was not the form in which the Charterers initially proposed this redelivery clause. In their original offer for the Vessel on 18 October 2007 the Charterers had suggested that they be entitled to redeliver the Vessel *"REDELY DLOSP 1 SP NOT WEST OF PASSERO / BLACK SEA"*. In other words they proposed that they be entitled to redeliver the Vessel to the east of Cape Passero and/or in the Black Sea.

5.    Redelivery in that range was not acceptable to the Owners, as they made clear to the Charterers in their counter on the same day. The Owners instead proposed that the Vessel be redelivered *"DLOSP 1SP MED SEA NOT EAST OF PASSERO, CHRTRS OPTION PASSING PASSERO WEST BOUND"*, reflecting the commercial reality for an owner with his vessel in this area, namely that after the charter the Vessel would be heading westbound out of the Mediterranean in ballast looking for her next employment and so she was to be redelivered in the western sector of the Mediterranean. This was the clause that was included in the parties' final agreement.

### The Charterers' purported redelivery

6.    The Vessel was delivered to the Charterers at 02.01 GMT on 24 October 2007 and loaded a cargo for them in South America. The Charterers then ordered the Vessel to carry this cargo for discharge at Ravenna in Italy.

7.    None of this is controversial. However, whilst the Vessel was on her voyage, the Charterers then purported to tender redelivery notices to the Owners suggesting that the Vessel would also be redelivered at Ravenna. In response, the Owners pointed out that this was not acceptable because Ravenna was not a contractual place of redelivery under the Charterparty. Nevertheless the Charterers redelivered the Vessel to the Owners at Ravenna at 18.05 GMT on 4 January 2008.

8.    Following this purported redelivery, the Vessel then sailed from Ravenna in ballast southwards round the heel of Italy and then shaped westwards toward Gibraltar eventually passing Cape Passero westbound at 23.30 GMT on 6 January 2008. It is the Owners' case that the Charterers were in breach of the Charterparty in redelivering the Vessel at Ravenna and that they are accordingly entitled to damages from the Charterers reflecting the time and cost of the Vessel's ballast voyage to Cape Passero.

### Ravenna was not a contractual place of redelivery

9.    The Owners' primary case is that Ravenna was not a contractual place of redelivery because it is a port in the Adriatic Sea and not the Mediterranean Sea, as shown by the Lloyds Maritime Atlas [Attachment 2]. The Charterparty was clear that the Vessel had to be redelivered in the Mediterranean Sea (*"...DLOSP 1SP MED SEA..."*).



10. Alternatively, if the Tribunal do not accept this, the Owners submit that for commercial purposes Ravenna is to be treated as being to the east of Cape Passero and so not within the contractual redelivery range under the Charterparty in the context of the parties' agreement for redelivery *"DLOSP 1SP MED SEA NOT EAST OF PASSERO"*.

11. The Charterers' contention has been that Ravenna is to the east of Cape Passero in the sense that if a line of longitude is drawn through Cape Passero, Ravenna is to the west of that line. However that is an overly literalistic way to approach this question and this clause - it completely ignores the commercial reality of how vessels are traded and why redelivery ranges are specified in time charters.

12. Page 127 of the latest BIMCO "Check Before Fixing" is [Attachment 3] is particularly informative in this regard:

*Is Venice East or West of Cape Passero?*

*Enquiry: A vessel was fixed on time charter stipulating redelivery "Hamburg/Gibraltar range, Mediterranean not East of Cape Passero in charterers' option." Last port of call prior to redelivery was Venice where charterers wanted to redeliver the vessel contending that Venice is not East of Cape Passero. Owners objected. Different rates of hire had been agreed upon for the above redelivery ranges. BIMCO's comments were requested by the member.*

*Reply: "In the context of time chartering and of a redelivery clause like the one in your case, we are of the consistent opinion that Venice is East of Passero and hence, charterers are not contractually allowed to redeliver the vessel at this port. It should be kept in mind that there is a commercial background to the agreement reached between the parties. The background is not sheer geography detached from realities shipping practice. In our view, the effect of the agreement is that vessel could be redelivered in an area between Gibraltar and the longitudinal line Cape Passero/Lybian coast and that the remaining part of the Mediterranean is East of Cape Passero. Venice is in the remaining part.*

13. Therefore, Venice, being in the same general vicinity as Ravenna in the Adriatic Sea, means that BIMCO's determination that from a commercial standpoint Venice is east of Cape Passero should equally apply to a determination that Ravenna is east of Cape Passero.

14. Further, Cape Passero was not identified in the redelivery clause as a position of longitude but as an actual recognised geographical way-point marking the eastern end of a particular trading range. In other words the parties had agreed, by concluding a contract requiring that the Vessel be redelivered *"DLOSP 1SP MED SEA NOT EAST OF PASSERO"*, that the Vessel would not be redelivered until she was in the trading range to the west of Cape Passero.



15.  This was made all the more clear by the option granted to the Charterers that instead of redelivering the Vessel on dropping her last outward sea pilot on leaving a port to the west of Cape Passero, they could redeliver her on passing Cape Passero steaming westbound ("*CHRTRS OPTION PASSING PASSERO WEST BOUND*"). This option only makes sense if Cape Passero is to be construed as referring to an actual geographical way-point and not merely to a line of longitude.

16.  The Owners' case is further strengthened by a London Maritime arbitration decision on this very point which is persuasive authority in this reference. In Arbitration 18/01 (reported in LMLN 13/9/01) the arbitrators considered a clause requiring the vessel to be redelivered "*on dropping last outward sea pilot at a safe port Mediterranean, not East of Cape Passero...*" [Attachment 4].

17.  The report recognised that:

     "*Cape Passero was located at the southern tip of the island of Sicily. In recent years, it had become an important nautical waymark and staging point in the international dry bulk shipping trade. Frequently, ships delivered on to and redelivered from time charter upon passing the longitude of Cape Passero west or eastbound, and it was taken as dividing the Mediterranean Sea into western and eastern sectors.*"

18.  Construing the contract against that commercial background (which applies as much today as it did in 2001), the arbitrators in that case stated that "*it was hard to believe that when negotiating the charter, either the owners or the charterers had in mind that under the redelivery wording agreed, the numerous ports on the Italian East Coast, or those of Slovenia or Northern Croatia to the west of longitude 15 degrees 09 minutes east of Cape Passero were ports at which the charterers were entitled to redeliver*".

19.  The meaning of the words of the contract had to be interpreted in the light of the realities of shipping practice and not merely as a question of "sheer geography" divorced from their context. Accordingly the arbitrators held that:

     "*...a reasonable shipbroker faced with a time charter redelivery clause to the effect that the charterers were to redeliver a vessel at "a safe port in the Mediterranean Sea, not East of Cape Passero" would expect either the vessel to be delivered at a port in the Mediterranean Sea to the west of Cape Passero - ie at a port located in one of those countries of Europe or North Africa bordering the Mediterranean Sea to the west of Cape Passero - or, if the vessel was at sea after leaving a port to the east of Cape Passero, then upon the vessel's crossing the longitude of Cape Passero in ballast westbound. He or she would not consider the charterers to be entitled to redeliver at a port in the Adriatic Sea, even if, on a strict geographic analysis, that port was to the west of longitude 15 degrees 09 minutes East.*"



20. The same considerations apply with equal force in this case and so the Owners submit that the Tribunal should reach the same conclusion and find that the Charterers were in breach of the Charterparty by redelivering the Vessel at Ravenna.

### Losses caused by redelivery in the wrong place

21. As set out above, the Vessel did not in fact pass Cape Passero westbound until 23.30 GMT on 6 January 2008 at which time she had on board 766.8 mt of IFO and 58.52 mt of MDO.

22. The Owners submit that they are entitled to damages reflecting the time (payable at the Charterparty hire rate) and the cost of ballasting the Vessel from Ravenna to Cape Passero. Adding that time and cost to the overall accounting position for the charter trip, the Charterers owe the Owners a balance of US$248,264.17, as set out in the Owners Final Hire Statement [Attachment 5]. To date the Charterers have failed to pay this sum and so the Owners now claim it as a debt or as damages.

### Redelivery with insufficient bunkers remaining on board

23. The Owners have a further claim against the Charterers arising from the fact that the Vessel was redelivered with insufficient bunkers remaining on board.

24. The Charterparty provided:

"BUNKERS CL: BUNKERS ON DELIVERY AS ON BOARD...BUNKERS ON REDELY TO BE ABOUT 850 MTS IFO AND ABOUT 55 MTS MDO. SAME PRICE BENDS USD 425 PMT/IFO AND USD 700 PMT/MDO".

25. However, rather than being redelivered with about 850 metric tons of IFO on board, the Vessel only had 766.8 metric tons of IFO on board when she passed Cape Passero westbound on 6 January 2008. This was a breach of the Charterparty by the Charterers.

26. As a result of this breach the Owners have suffered loss and damage in that:

    (a) The Vessel was redelivered with a shortfall of 40.7 mt of IFO (viz 807.50 mt minus 766.80 mt - taking into account a margin of 5% for the word "about" in "ABOUT 850 MTS").

    (b) If they had been on board on redelivery, the Owners would have had to pay the Charterers the contractual charter price of US$425.00 per mt for these bunkers.

    (c) However when the Owners subsequently bunkered the Vessel in the Mississippi River on her next voyage they had to pay the higher price of US$456.91 per mt for IFO (this was the average price of the IFO bunkered taking into account the relevant barging and fees) [Attachment 6].



(d)    The Owners have accordingly suffered a loss of US$1,298.74 - calculated as 40.7 mt x US$31.91 (i.e. US$456.91 minus US$425.00).

## Conclusion

27.    For the reasons set out above, the Owners ask the Tribunal to award them the following sums:

(a)    US$248,264.17 or damages in that amount, being the sum recorded as the balance due in the Owners' Final Hire Statement; and

(b)    US$1,298.74 as damages for redelivering the Vessel with insufficient IFO remaining on board;

(c)    Further the Owners claim interest pursuant to section 49 of the Arbitration Act 1996;

(d)    Legal costs; and

(e)    Costs of Arbitration.

We would be grateful if the Tribunal would direct the Owners to serve their defence submissions, if any, within 28 days pursuant to the recommended directions for the LMAA procedure.

Yours truly,

*Holman Fenwick Willan*

**HOLMAN FENWICK WILLAN**

HFWLDN:5273430-1

# EXHIBIT 4



AGRENCO ITALIA SPA ·
VIA NAPOLEONE COLAJANNI, 4 – 00181 ROME (ITALY)

8 July 2008

A. G. Scott
Creek House
39, The Lane
West Mersea
ESSEX CO5 8NS
United Kingdom

**H F N** 09 JUL 2008  **08 : 3 1**

Christopher Moss
4 Charlotte Place
Wilton Road
London SW1V 1DP
United Kingdom

Holman Fenwick Willan
Marlow House
Lloyds Avenue
London EC3N 3AL
United Kingdom

Dear Sirs,

### Global Maritime Investments Ltd -v- Agrenco Italia SpA: m/v "PELAGIA" – charterparty dated 19 October 2007

Please accept the instant and its enclosures as the Respondents' Defence and Counterclaim Submissions in response thereto.

Enclosed with this letter is a paginated bundle of copy documents; references to numbers in square brackets in the course of these submissions are to page numbers in that bundle.

References to paragraph numbers herein are references to the Claimants' letter of claim dated 11 June 2008 ("the letter of claim").

Save insofar as expressly admitted herein, the Respondents take issue with the Claimants in respect of the letter of claim.

# EXHIBIT 5



(ATTACHMENT 01)

**APPLIED WEATHER TECHNOLOGY**
*leading edge weather technology*

158 Commercial Street, Sunnyvale CA 94086 USA  Tel (408)731-8500 Fax(408)731-8501

*www.appliedweather.com*

## Preliminary Voyage Performance Report

Company Name:  AGRENCO ITALY

Vessel Name:  PELAGIA

Departure Port and Date:  PARANAGUA Nov 24 2007

Arrival Port and Date:  KOPER Dec 18 2007

Reference Number:  071114065

Tuesday, December 18, 2007

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GLOBAL MARITIME INVESTMENTS LTD.                 :
                                                 :
                    Plaintiff,                   :
                                                 :
        - against -                              :
                                                 :        08 Civ ____
AGRENCO ROMA a/k/a AGRENCO ITALIA SpA            :
a/k/a AGRENCO ITALY, AGRENCO GROUP,              :
and AGRENCO SA,                                  :
                                                 :
                    Defendants.                  :
------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )    ss: SOUTHPORT
County of Fairfield   )

        Coleen A. McEvoy, being duly sworn, deposes and says:

        1.    I am a member of the Bar of this Court and represent the Plaintiff herein. I am
familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the
issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the
Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.    I have attempted to locate the Defendants, AGRENCO ROMA,  AGRENCO
ITALIA SpA,  AGRENCO ITALY, AGRENCO GROUP, and AGRENCO SA within this
District. As part of my investigation to locate the Defendants within this District, I checked the
telephone company information directory, as well as the white and yellow pages for New York
listed on the Internet or World Wide Web, and did not find any listing for the Defendants.

Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration(s) for the Defendants.

3.    I submit based on the foregoing that the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.    Upon information and belief, the Defendants have, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendants.

5.    This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold property of, for or on account of, the Defendants.

7.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendants.

-2-

8.     To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.     Further, in order to avoid the need to physically serve the garnishees/banks daily and repetitively, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

-3-

## PRAYER FOR RELIEF TO TEMPORARILY SEAL CASE

11.    Upon information and belief, it is the practice of many law firms in the maritime bar to review the daily electronic docket sheet of the Southern District of New York for all maritime actions filed in the district and inform the defendant(s) named therein of any Ex Parte Orders of Attachment pending against them, thus defeating the purpose of the "Ex Parte" application.

12.    Defendant(s) and/or companies related or affiliated with the Defendant(s) named in this case are known to monitor the docket and, in response to such monitoring, in a different case, have contacted an attorney at this firm **less than 24 hours after the case was filed and well before the attachment order was even issued.**

13.    Upon information of belief, it is the practice of certain publications, specifically Tradewinds, to publish the names of defendants named in Ex Parte Orders of Attachment, thus further defeating the purpose of the "Ex Parte" application.

14.    Upon information and belief, Tradewinds has very recently publicized the names of parties in Rule B proceedings, the amount of the attachments, and other details of the actions, thereby further defeating the purpose of the "Ex Parte" application. *See copies of recent Tradewinds article annexed hereto as Exhibit 1.*

15.    The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein.

16.    The above interest supersedes the interest in maintaining a completely public docket, especially given that the public's access will only be limited temporarily until assets are attached and notice of attachment has been provided to the Defendants.

17.    Indeed, the public's access to Ex-Parte Orders of Maritime Attachment defeats their entire purpose, by depriving Plaintiffs of the element of surprise and potentially allowing Defendants to re-route their funds to avoid the attachment, thus making the attachment remedy hollow.

18.    For the foregoing reasons, Plaintiff requests that the Court issue an Order temporarily sealing the court file in this matter, including the Verified Complaint and all other pleadings and Orders filed and/or issued herein until further notice of this Court or notification to the clerk that property has been attached.

19.    This request is narrowly tailored to meet Plaintiff's needs. Once property is attached, the case should be unsealed, as the interest underlying sealing the case will have been largely eliminated.

Dated:        July 17, 2008
              Southport, CT

                                                    Coleen A. McEvoy

Sworn and subscribed to before me
this 17th day of July, 2008.

Notary Public

-5-